SAMUEL W. HUDSON, *by* WM. W. LYNDE, *Guardian, v.* JOHN WORDEN.

*Master and Servant. Soldiers. Infancy.*

No formal act or express declaration is necessary on the part of an apprentice, bound out by his father when under fourteen years of age to serve until he should be twenty-one, to avoid the indenture after he arrives at the age of fourteen.

Leaving the master's employ by the apprentice, enlisting into the army of the government as a soldier, and going into the military service, is an abandonment of the indenture, and in law a revocation of it.

Even the assent of the minor to treat the new service, as a service under the indenture, would not bind [him. Such contract would be revocable by him through his guardian.

The indenture being revocable at the election of the minor, he cannot be made liable in damages for revoking or avoiding it.

The plaintiff's ward was bound out at ten years of age by his father to the defendant to serve until he should be twenty-one. He continued his service until he was sixteen, when he enlisted as a substitute and received $325. of one C. therefor, which the ward delivered to the defendant. *Held*, that the plaintiff could recover this money of the defendant. The defendant could not recover under his plea in offset for the excess of his expenditures for the ward up to the time he enlisted, over and above the value of the services of the ward for the same time.

But for money paid out by the defendant for necessaries for the ward after he enlisted, he at that time having no guardian, the defendant could recover.

THIS was an action of general assumpsit, to recover the sum of $325. received by the defendant to the use of Samuel W. Hudson. Plea, general issue, and special plea in offset.

The evidence of the plaintiff tended to show that on the 13th day of December, 1864, the said Samuel enlisted into the service of the United States for the period of three years, and was duly mustered into service as the substitute of one John H. Cowan, of Salem, New York, and received from Cowan, in consideration therefor, the sum of $375.; that the said Samuel caused $325. of said money to be forwarded by express to the defendant, and the defendant duly received the same; that on the 17th day of July, 1865, Wm. W.

Lynde was duly appointed guardian of the said Samuel; that on the 1st day of August, 1865, Lynde demanded of the defendant payment of the $325. to him as guardian of the said Samuel, which the defendant refused to pay.

The defendant then offered in evidence an indenture, paper *A*, dated April 15th, 1859, entered into between the defendant and the father of said Samuel, by which the said Samuel, at the age of ten years, was bound to the defendant as an apprentice until he should attain the age of twenty one, to serve the defendant faithfully and was to receive his living, etc., and $100. in money at his majority. From and after April 15th, 1859, until the 13th day of September, 1864, the said Samuel lived with the defendant, and was in all respects well treated and cared for as by the defendant's agreement and covenants contained in paper "*A*". The defendant's evidence tended to show that the services and labor of the said Samuel for the period aforesaid, were a small equivalent for what was furnished him by the defendant, and that the $325. was no more than adequate to make up such deficiency.

The defendant further gave in evidence three letters from Samuel to the defendant, written while he was in hospital at Fortress Monroe, requesting the defendant to come and aid him in getting a discharge, and referring to the indenture, and to the defendant as his guardian.

The evidence of the defendant further tended to show, that soon after the 20th of March, 1865, he took steps to procure the transfer of the said Samuel from the hospital where he was confined, which was at or near Fortress Monroe, Virginia, to the United States general hospital at Brattleboro, Vermont; that for this purpose he made journeys to Newfane, Wilmington, Brattleboro, Vermont; Troy, New York; Washington, D. C., and Fortress Monroe, Virginia; and in so doing he necessarily expended upwards of $100. in money, and from twenty-five to thirty days time; that his time was worth $2. per day; that the said Samuel was at the time these efforts were made by the defendant, in very feeble health; that he had lost the use of one or both of his legs and was otherwise much enfeebled; that the defendant incurred the expense aforesaid in good faith, and

for the benefit, as he supposed, of the said Samuel; and that subsequently he procured the said Samuel's discharge from service.

The defendant insisted that he was entitled to retain the money in his hands as the master of the plaintiff's ward, to reimburse the defendant for his expenditures in the nurture and education of the said Samuel during the period he continued to reside with the defendant as his apprentice; and that in any event he was entitled to retain enough of said money, under his plea in offset, to reimburse him for his expenditures and services in obtaining the said Samuel's transfer and discharge. But the court, BARRETT, J. presiding, held otherwise, and directed the jury to return a verdict for the plaintiff for the amount claimed, and interest from the time the demand was made of the defendant by the guardian,—to which decision of the court the defendant excepted.

*Charles N. Davenport* and *Clark & Haskins*, for the defendant, maintained that even though the indenture should be held to be *voidable* by the apprentice on his arriving at the age of fourteen, yet if he consented to serve and did serve under it, he became an apprentice *de facto*, and what the apprentice gained he gained for his master; and that he was in law and in fact an apprentice of the defendant until after his discharge. Reeves' Dom. Rel. 342; *Barber* v. *Dermis*, Salkeld R. 68; *Phelps* v. *Culver*, 6 Vt. 430. If the defendant is not entitled to retain this money under this contract, he is entitled to it under his plea in offset. What the defendant did for the plaintiff's ward was absolutely necessary for his comfort, health and life.

*A. Stoddard* and *Geo. Howe*, for the plaintiff.

The contract set forth in paper *A.* was improperly received as evidence. By our statute it could not bind the minor after he arrived at the age of fourteen years. G. S. ch. 73, § 4; Comp. Stat. ch. 70, § 4. Such would have been the result of common law. Reeves Dom. Rel., 342, note. *The King* v. *The Inhabitants of Amsby* 3 B. &. A., 5 E. C. L. 385.

The fact of the minors having taken the benefit of the indenture does not bind him to the fulfilment of its covenants. *Rex* v. *Inhab-*

*itants of Amsby, supra*; *Rex* v. *Inhabitants of Cromford*, 8 E. 25 ; 2
Kent's Com. 263 ; *Person* v. *Chase*, 37 Vt. 647.  The expenses of
procuring the plaintiff's discharge were not necessary, and this is
for the court to decide.  *Bent* v. *Manning*, 10 Vt. 225 ; *Maddox* v.
*Miller*, 1 M. & S. 738.

The opinion of the court was delivered by

PECK, J.  The plaintiff, a minor, sues by guardian to recover of
the defendant $325., being money the plaintiff received of one
Cowan of the state of New York, for enlisting on the 13th of
December, 1864, and serving in the United States army as a substi-
tute for Cowan ; which money, on going into the army, he (the
minor) delivered or sent to the defendant, and which the defendant
received.  The plaintiff, when he enlisted and received this money
and placed it in the hands of the defendant, was sixteen years of age.

The defendant insists that the money in question was his property
from the time this minor received it, and that it is still his own, on
the ground that the minor was his apprentice, bound as such till
twenty-one years of age by articles of indenture executed between
the defendant and the minor's father when the minor was ten years
old ; and that the earnings of such apprentice belonged to the master.

It is claimed by the plaintiff that the indenture is void ; first, upon
the ground that it does not sufficiently appear that it was executed in
duplicate, and also because the statute authorizes the parent to bind
his minor children under the age of fourteen years only until that
age, and to bind his minor children above the age of fourteen years,
only by the consent of the minor being expressed in the indenture
and testified by such minor signing the same.  This indenture was
executed by the minor's father and the defendant when the minor
was ten years old, and purports to bind him till twenty-one years of
age, and the minor's consent is not expressed in the instrument or
testified by his signing it.  This, however, is not required by the
statute in case of the binding of minors under fourteen years of age.
The plaintiff's counsel claim that as the father assumed by this
indenture to bind his son a longer time than till fourteen years of
age, the instrument was null and void from the beginning, and if

not, it became absolutely void when the minor arrived at the age of fourteen years. The defendant insists that it was not void, that at most it only became voidable when the minor reached the age of fourteen years, and that the minor has not avoided it, or at least did not do so before the money in question was earned; and that so long as he acquiesced in and continued to serve under it, his earnings and accumulàtions belong to the master. In support of this proposition we are referred, among other cases, to *Phelps* v. *Culver*, 6 Vt. 430. In that case it was decided that an apprentice bound by indenture which became voidable merely, could not avoid the indenture so as to recover for services previously rendered under it, although rendered after the indenture became voidable.

In the view we take of this case, we have no occasion to question the doctrine of that case, nor to decide whether this indenture was in its inception void, or became so when the minor arrived to the age of fourteen years. It is sufficient to say that when the minor became fourteen years of age the indenture became voidable at his election.

The case shows that the plaintiff continued to serve under this indenture till the 13th of September, 1864. That on the 13th of December, 1864, he enlisted in the state of New York into the United States army, as a soldier, went into the military service, and that he obtained the money in question for thus enlisting as a substitute for one Cowan. The case does not show expressly that the plaintiff was in the service of the defendant under the indenture after September 13th, 1864, nor that he was so when he enlisted and obtained the money in question.. There is some evidence however which may tend to show that the plaintiff still regarded the indenture as in force after that; and if that fact would entitle the defendant to the fund in question, the evidence should have been submitted to the jury.

But no formal act or express declaration was necessary on the part of the apprentice to avoid the indenture. We think the leaving of the plaintiff, enlisting into the army of the government as a soldier, and going into the military service, was an abandonment of the indenture, and in law a revocation of it. The new duties which he

thereby assumed, the service which he undertook, and the obligations which he contracted, were not only entirely foreign to the purposes and objects of the indenture, but entirely inconsistent with it. He formed new relations and put himself under new masters, thereby relieving the defendant from the obligation of that support, instruction, education, and other duties imposed on the defendant by the indenture and at the same time placed himself beyond the reach of its benefits. This was a sufficient revocation. This new service can in no sense be considered a service under the indenture. Even the assent of the minor to treat it as a service under the indenture would not bind him; such contract would be revocable by him through his guardian, the same as ordinary contracts of infants, and attended with the same legal results. It would be a new contract and not a continuation of the old one. It will be noticed that in *Phelps* v. *Culver*, cited in argument, the services for which the plaintiff sought to recover, were of the same character contemplated in the indenture, while at the same time the plaintiff enjoyed all its provisions for her benefit. Not so in this case, but the very reverse. In this case the plaintiff under his enlistment neither did nor could perform the duties, or enjoy the benefits, of the indenture. The plaintiff therefore is liable for the money in question.

The defendant claims under his plea in offset, to recover the excess of his expenditures for the apprentice up to September 13th, 1864, under the indenture, over and above the value of the services of the plaintiff for the same time. It follows from what has already been said that there is no legal ground for such claim. The indenture being revocable at the election of the plaintiff, he can not be made liable in damages for revoking or avoiding it. The principle of the case of *Phelps* v. *Culver*, forbids such recovery; for if the apprentice can not recover for services rendered under a voidable indenture over and above the benefits received, the master cannot recover of the apprentice when the excess is in his favor.

The defendant claims also to recover under his plea in offset, for money and time in procuring the removal of the plaintiff from Fortress Monroe while sick there, to Brattleboro, and subsequently procuring his discharge from the service. As the minor at that time

had no guardian, the defendant is entitled to recover such expenditure, if it was so far necessary as to come within the principle applicable to claims for necessaries furnished to infants.  Considering the condition of the health of the plaintiff at that time, we think there was at least some evidence tending to show that those expenditures were necessaries, and that the question ought to have been submitted to the jury under proper instructions.  What those instructions should be, can better be determined in view of the state of the evidence which may be developed at the trial, than be laid down in advance upon the brief statement of the evidence in this bill of exceptions.

Judgment reversed and new trial granted.